OPINION
{¶ 1} Appellant, Adam Noble ("Noble"), appeals his convictions for Failure to Comply with a Signal of a Police Officer, a third degree felony in violation of R.C. 2921.331(B), and Felonious Assault on a Peace Officer, a first degree felony in violation of R.C. 2903.11(A)(2), and his sentence of fourteen years imprisonment. Noble was convicted and sentenced following a jury trial in the Ashtabula County Court of Common Pleas. For the following reasons, we affirm Noble's convictions and sentence.
 {¶ 2} At about eleven o'clock on the evening of April 30, 2002, Geneva-on-the-Lake Police Sergeant Hugh Flanigan ("Flanigan") and his partner, Patrolman Salvatore Travaglio ("Travaglio"), were traveling eastbound on Lake Road in the Village of Geneva-on-the-Lake, near the Indian Creek Campgrounds. The officers were responding to the reported robbery of a grocery store on the campgrounds. They spotted a vehicle with no lights on parked on the side of the road, which was occupied by Noble.[1] As the officers approached, the vehicle abruptly started and began traveling eastbound on Lake Road. When Flanigan observed the vehicle turn onto Lake Road without its headlights and "fishtailing," he activated his overhead lights and siren to signal for the vehicle to stop. When the vehicle began to speed away, the officers began pursuit. The vehicle continued east on Lake Road before turning south/right onto North Myers Road. Flanigan estimated the vehicle's speed on North Myers Road was as high as a hundred miles per hour. The vehicle ran the stop sign at the south end of North Myers Road, turning left onto Route 20 towards Ashtabula.
 {¶ 3} The officers continued their pursuit. Flanigan and Travaglio testified that, while on Route 20, they approached to within a car's or a car and half's length from Noble's vehicle in order to confirm his license plate number. According to the officers, Noble suddenly applied the brakes and turned sharply to the left so that the back of his vehicle struck the front of the police cruiser causing Flanigan to temporarily lose control of the cruiser.
 {¶ 4} The Ohio Highway Patrol had been notified of the pursuit and set up a road block with "stop sticks" at the intersection of Route 20 and Depot Road. Noble crossed the intersection traveling an estimated sixty to sixty-five miles per hour. Noble swerved as he passed the intersection in order to avoid the stop sticks and, in doing so, almost struck one of the State Troopers. The stop sticks deflated three of the tires on Noble's vehicle. Noble continued east until he entered Ashtabula city limits where he was apprehended.
 {¶ 5} Noble timely brings the following assignments of error.
 {¶ 6} "[1.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 7} "[2.] The appellant's conviction for felonious assault is against the manifest weight of the evidence.
 {¶ 8} "[3.] The trial court erred by imposing the maximum sentence for a felony of the third degree upon appellant."
 {¶ 9} In his first assignment of error, Noble claims that trial counsel was ineffective for failing to move to suppress certain statements made to Travaglio following his arrest. Noble was in police custody by about 11:15 pm, or about twenty minutes after the chase was initiated. Immediately following the arrest, Travaglio read Noble his Miranda rights. Subsequently, Noble was taken to Memorial Hospital in Geneva. While en route, Noble informed Travaglio that he had smoked crack at about 10:30 that evening. Travaglio then asked him "why he ran." According to Travaglio, Noble replied that "he didn't know why. It was a stupid thing to do and he didn't mean to cause any trouble, but that he was trying to get home before the — trying to get to his home so we couldn't tow his car." Noble argues that his confession to having smoked crack should have caused Travaglio, as well as trial counsel, to doubt whether his waiver of the right to remain silent was truly voluntary.
 {¶ 10} The Ohio Supreme Court has adopted the two-part test for evaluating the constitutional effectiveness of an attorney's performance articulated by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668. To prevail on a claim of ineffective assistance of counsel, the defendant must show "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v.Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, citingStrickland, 466 U.S. at 687-688.
 {¶ 11} The right to effective assistance of counsel does not require an attorney to file a motion to suppress in every instance. Id. at 389. "[W]here the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." Statev. Tibbetts, 92 Ohio St.3d 146, 166, 2001-Ohio-132, quotingState v. Gibson (1980), 69 Ohio App.2d 91, 95.
 {¶ 12} Having reviewed the record, we conclude that the successful suppression of Noble's statements to Travaglio would not have changed the outcome of Noble's trial. Therefore, Noble's trial counsel did not fall below an objective standard of reasonableness by failing to suppress those statements. Noble does not dispute the fact that his initial statement to the police, that he had smoked crack, was voluntary. The only statement that could be suppressed, then, was Noble's reply to Travaglio's query "why did you run." Noble's response to Travaglio can be fairly construed as an admission that he did, in fact, flee from the police. However, this fact was not disputed at trial. Noble's counsel during opening statement candidly admitted that there was a "pursuit" of his client. For a defense, Noble's attorney disputed the circumstances of the pursuit, i.e. whether Noble's conduct created substantial risk of harm to persons or property, and the circumstances of the collision between Noble's vehicle and the police cruiser. In light of this trial strategy, suppressing Noble's reply to Travaglio's query would have contributed nothing toward the possibility of a favorable outcome. State v. Nields, 93 Ohio St.3d 6, 34,2001-Ohio-1291; Madrigal, 87 Ohio St.3d at 389-390.
 {¶ 13} Also, there is little likelihood that Noble could have successfully suppressed his statements. Noble challenges the voluntariness of the decision to speak with Travaglio on the grounds that he had recently smoked crack. The Ohio Supreme Court has held that "coercive police activity is a necessary predicate to finding that a confession is not voluntary within theFifth Amendment, on which Miranda was based." State v. Dailey
(1990), 53 Ohio St.3d 88, 91-92, citing Colorado v. Connelly
(1986),479 U.S. 157, 170 ("[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on `free choice' in any broader sense of the word"). In the absence of coercive police conduct, a court need not consider an offender's allegations that intoxication has impaired his capacity to waive his Fifth Amendment rights. SeeState v. Treesh, 90 Ohio St.3d 460, 472-473, 2001-Ohio-4
(although defendant claimed his capacity to waive his Miranda
rights was impaired due to "tiredness" and "cocaine high," it was unnecessary to consider the circumstances of the waiver since there was no evidence of coercive police tactics). Noble's first assignment of error is overruled.
 {¶ 14} In his second assignment of error, Noble argues that his conviction for felonious assault is against the manifest weight of the evidence. In order to convict Noble for felonious assault on a peace officer, the state bore the burden of proving that Noble "knowingly * * * [c]ause[d] or attempt[ed] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2).
 {¶ 15} A challenge to the manifest weight of the evidence contests the believability of the evidence supporting the conviction. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13. The issue for the reviewing court when considering a manifest weight of the evidence challenge is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." Nields,93 Ohio St.3d at 25, quoting State v. Getsy, 84 Ohio St.3d 180,193-194, 1998-Ohio-533 (emphasis sic). An appellate court reviews the entire record, weighs the evidence and all reasonable inferences drawn from it, considers the witnesses' credibility, and decides whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. Generally, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus.
 {¶ 16} Noble was convicted of felonious assault based on the finding that Noble used his vehicle to ram the police cruiser operated by Flanigan. Noble advances the theory that the collision was the result of the officers attempting to perform Pursuit Intervention Tactics or a "PIT" maneuver, by which a pursuing vehicle attempts to disable the pursued vehicle by pulling alongside the rear of the pursued vehicle and hitting the vehicle's rear end, thereby causing it to spin and stop.
 {¶ 17} In support of this argument, Noble asserts that the officers' testimony that the collision occurred on Route 20 is contradicted by the dispatch log. The dispatch log indicates that the officers reported being hit at 22:58 (10:58 pm) and proceeding eastbound on Route 20 at 22:59 (10:59 pm). Noble questions Flanigan's testimony that he drew near to Noble's vehicle to confirm his license plate number. Noble points out that, according to the dispatch log, Flanigan radioed in Noble's license plate number at 22:58 (10:58 pm), prior to the report of being hit. Since it appears that the officers had already obtained Noble's license plate number prior to the collision, Noble asks, why would it have been necessary for them to draw near in order to confirm the information.
 {¶ 18} Although this discrepancy is consistent with Noble's theory that the collision occurred as the result of an attempted PIT maneuver, there is an abundance of evidence that supports the officers' version of events. Both Flanigan and Travaglio testified that they were uncertain about the license plate number obtained while on North Myers Road, and that to confirm it, they approached Noble's vehicle on Route 20. The officers' efforts to obtain an accurate license plate number were justified by the need to identify the owner of the vehicle and to obtain any other relevant information about the potential suspect. Both officers were agreed that the collision was the result of Noble's actions and that the collision occurred on Route 20. Flanigan also testified that the times indicated on the dispatch log do not necessarily reflect the time an event actually occurred, since officers radio information in when they feel "comfortable" doing so. At most, then, the dispatch log proves that Flanigan radioed in that his cruiser had been hit before radioing in his location on Route 20. Finally, the damage to Noble's vehicle, located on the driver's side rear end, is equally consistent with Noble trying to run the officers off the road as it is with the officers attempting a PIT maneuver. Noble's second assignment of error is without merit.
 {¶ 19} In his third assignment of error, Noble argues that the trial court erred by imposing the maximum sentence of five years for his failing to comply conviction.
 {¶ 20} An appellate court reviews a felony sentence under a clear and convincing evidence standard of review. R.C.2953.08(G)(2). An appellate court may not disturb a sentence unless the court "clearly and convincingly finds" that "the record does not support the sentencing court's findings," or that "the sentence is otherwise contrary to law." R.C.2953.08(G)(2)(a) and (b). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 21} Pursuant to R.C. 2929.14(C), a "court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only * * * upon offenders who pose the greatest likelihood of committing future crimes * * *." In the present case, the trial court found on the record that Noble posed the greatest likelihood of committing future crimes. "However, these findings alone are insufficient for the imposition of a maximum sentence. When imposing a maximum sentence, the trial court must also comply with R.C.2929.19(B)(2)(d), which requires the trial court to give its reason for imposing the maximum prison term." State v. Chike,
11th Dist. No. 2001-L-120, 2002-Ohio-6912, at ¶ 8.
 {¶ 22} In considering whether an offender poses the greatest likelihood of reoffending, R.C. 2929.12(D) sets forth five factors for the sentencing court to consider: (1) whether the offender was under post-release control at the time of sentencing for an earlier offense; (2) the offender's criminal record; (3) whether the offender has responded favorably to previous sanctions; (4) whether the offense is related to pattern of drug or alcohol abuse; and (5) whether the offender shows genuine remorse. R.C. 2929.12(D)(1) — (5). "There is no requirement that more than one of the five factors be present in order for the trial court to determine that the offender poses the greatest likelihood of committing future crimes." Chike, 2002-Ohio-6912, at ¶ 10.
 {¶ 23} In the present case, the trial court relied on three of these factors in determining that Noble posed the greatest likelihood of committing future crimes. The first was that Noble was on post-release control at the time he committed the present offenses. R.C. 2929.12(D)(1). Noble does not dispute this finding.
 {¶ 24} The trial court also relied on Noble's history of criminal convictions, described as "one of the worst criminal records" that the court has ever reviewed. R.C. 2929.12(D)(2). The court noted that Noble has committed crimes continuously for the past eighteen years, has been incarcerated six times, and has a criminal record ten pages long, including nine felony convictions. We agree with the trial court that Noble's criminal record is substantial and that, if his criminal record is any indication, "recidivism is highly, highly likely in this case."
 {¶ 25} Finally, the trial court noted that there was evidence of drug use in Noble's prior convictions as well as the commission of the instant offenses. R.C. 2929.12(D)(4). Noble does not challenge the validity of the court's finding but argues, rather, that Noble's criminal history evidences a drug problem and the need for treatment rather than the likelihood to commit future crimes. We do not find that Noble's need for drug treatment is incompatible with the court's finding that his drug abuse increases the likelihood of committing future crimes.
 {¶ 26} Having found at least three of the five factors indicating a likelihood of recidivism present, we conclude that the trial court's finding that Noble poses the greatest likelihood of committing future crimes to be supported by clear and convincing evidence. Therefore, we affirm the trial court's decision to impose the maximum sentence on Noble for failing to comply with the signal of a police officer. Noble's third assignment of error is overruled.[2]
 {¶ 27} For the foregoing reasons, the decision of the Ashtabula County Court of Common Pleas is affirmed.
Judgment affirmed.
Ford, P.J., and Rice, J., concur.
[1] Noble was charged with burglary in the original indictment. The state dismissed this charge, without prejudice, prior to trial.
[2] Noble also challenges the trial court's finding that he committed one of the worst forms of the offense of failing to comply. Since we find that the trial court properly imposed the maximum sentence on the grounds that Noble poses the greatest likelihood of re-offending, we need not consider the court's finding as to this crime being one of the worst forms of the offense. State v. Cook, 11th Dist. No. 2003-L-009, 2004-Ohio-793, at ¶ 27 (citations omitted); State v. Chike,
11th Dist. No. 2001-L-120, 2002-Ohio-6912, at ¶ 14. R.C.2929.14(C) only requires the sentencing court to find that an offender falls into one of the categories described therein in order to impose the longest prison term authorized for a felony offense.